UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| ROMONA R. MAYEAUX; aka CHIEF MAYEAUX, § § § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 3:11-CV-242 |
| § | |
| HOUSTON INDEPENDENT SCHOOL DISTRICT, *et al*, § § § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Although the federal courts frequently hear employment discrimination cases, the protected status at issue in this case is not a commonly litigated one: military status under the Uniformed Services Employment and Reemployment Rights Act (USERRA). Plaintiff Romona Mayeaux is a member of the United States National Guard and, until the termination that led to this suit, was an at-will employee for a middle school in the Houston Independent School District (HISD). She contends that HISD fired her because she missed time from work due to her military obligations. HISD maintains that Mayeaux's termination was based solely on her violations of school fundraising procedures and seeks summary judgment on that ground.

**I. BACKGROUND[1]**

**A. Mayeaux Is Hired**

In July 2005, HISD hired Plaintiff Mayeaux as an at-will JROTC teacher at Fonville Middle School to train students in the school's Leadership Citizen and Development Corps. Her supervisor was the principal, Roger Ibarra. Mayeaux was and remains an active member of the United States National Guard and as such is required to attend military service one weekend every month and military training fifteen days every year. Docket Entry No. 57-2 at 2.

**B. Mayeaux's Fundraising Activities**

Because of her military obligations, Mayeaux missed a training program provided to Fonville teachers in August 2009 in preparation for the 2009-2010 school year. The training program reviewed the fundraising procedures applicable to all Fonville employees, which remained unchanged from the 2008-2009 school year. The basic rules for fundraisers at Fonville are:

- Teachers must submit two forms: a Form AF-108 (Permission Request for a Money Raiser) a Form AF-115 (Authority to Purchase Goods and Services from Activity Funds). The principal must sign both forms before any fundraising activities may commence.

- Teachers must turn in monies to Fonville's General Clerk on any day in which at least $20.00 has been collected and must submit all money collected during the week of the fundraiser by week's end.

---

[1] Given the summary judgment posture, the following recitation of facts resolves credibility determinations in Mayeaux's favor.

Docket Entry No. 54-1 ¶ 2. The August training included only one new instruction to supplement these rules, which was that in accordance with new state regulations, teachers could not fundraise by selling certain "foods of minimal nutritional value," like candy. *Id.* ¶ 4. In September 2009, Mayeaux received an email from Fonville's business manager reminding her and other employees to comply with the school's fundraising procedures. A month later, Mayeaux conducted a fundraiser in compliance with those procedures.

During January 2010, Ibarra heard from parents of Mayeaux's JROTC students who were upset that the students would not be travelling to an out-of-town competition. It soon became clear that for the students to attend the event, Mayeaux would need to conduct another fundraiser. After a meeting with the parents and Mayeaux, Ibarra told Mayeaux that "if not for your military service obligations, you would not be in the situation you are in now." Docket Entry No. 57-2 ¶ 6. Mayeaux responded that she would not let Ibarra use her military service against her. *Id.*

Mayeaux decided to launch a candy-bar fundraiser, and submitted a Form AF-108 and a Form AF-115 to purchase the chocolate on January 26. Mayeaux's Form AF-108 was initially incomplete, and Fonville's secretary corrected it on February 1. Ibarra did not sign either form. Docket Entry No. 54-1 ¶¶ 9, 10.

On February 2, Ibarra noticed a student selling the chocolates that Mayeaux had requested permission to purchase but that Ibarra had not yet approved. Ibarra confronted Mayeaux and she admitted that she had already started selling candy bars to raise money for the JROTC program. A week later, Ibarra wrote Mayeaux a memorandum informing her that she was conducting an unauthorized fundraiser. Docket Entry No. 54-10. Mayeaux did not have an invoice for the chocolate purchase when Ibarra requested one, nor had she submitted any money from the previous week's chocolate sales to Fonville's General Clerk. After Ibarra asked to see where Mayeaux was storing the money from the chocolate sale, she produced a lock box in her classroom containing $1,335.15, which she explained came from funds earned through a variety of JROTC activities. Docket Entry No. 54-1 ¶ 13.

Ibarra then began investigating a separate fundraising activity involving jacket sales to JROTC students. He discovered that Mayeaux had been selling jackets to staff members for a discounted price without Ibarra's authorization. Additionally, she had not kept detailed records of the jackets she had sold or assigned to students for temporary use. Ibarra asked Mayeaux to complete an inventory of all equipment in her possession, an inventory of the jackets, and an explanation of why she kept an excess of $50.00 in a lock box without any documentation. After initially refusing to complete the inventory, Mayeaux eventually complied with Ibarra's requests. *Id.* ¶¶ 14–17.

Ibarra then asked the HISD Office of Inspector General to conduct an investigation into Mayeaux's "[u]nauthorized fundraiser" and inaccurate "records of monies collected."  Incident Report Form Requesting Investigation, Docket Entry No. 54-11 at 1, 4.  On February 17, Ibarra reassigned Mayeaux with pay from the school to the general HISD JROTC office pending the findings of the Inspector General's investigation.  Docket Entry No. 54-1 ¶ 19.

### C. The Inspector General's Initial Report

The Inspector General formally presented its report to Ibarra on November 5, 2010, which stated as background that Ibarra had reported Mayeaux's "possible mishandling of activity funds and equipment" to the Inspector General for investigation.  Docket Entry No. 54-13 at 2.  It also noted at the outset that Mayeaux "missed an excessive number of days during the 2009-2010 school year due to claimed military leave."  *Id.*  The report first made findings about Mayeaux's alleged mishandling of funds and concluded that Mayeaux violated Fonville's fundraising procedures and left an unexplained shortfall of $2,472.19 for the chocolate fundraiser and $746.00 for the jacket sales.  *Id.* at 2–3.

The Inspector General then dedicated significant attention—one and a half pages of the four-page report—to Mayeaux's military absences.  *Id.* at 4–5. Mayeaux had claimed military leave in August and October 2009 and February, April, May, June, and October 2010.  But the Inspector General determined that

Mayeaux "only provided military orders for the August, 2009 and February, 2010 trainings" and "did not give proper advance notice of her military obligations in any instances." *Id.* at 4. The report concludes that "[b]ecause of Ms. Mayeaux's absences along with the financial problems previously mentioned in this report, Ms. Mayeaux was relieved of her duties at Fonville Middle School on February 16, 2010." *Id.*

### D. The Inspector General's Revised Report

Ibarra says that upon seeing that conclusion in the Inspector General's report, he promptly submitted a memo to his supervisor, objecting that the reassignment "was requested because of the investigation into the mishandling of funds and equipment," not because of Mayeaux's absences. Docket Entry No. 54-14 at 2. He requested that the "investigation report [] clarify the reason for the request for reassignment." *Id.* He also asked that "the report [] reflect the fact that the absences in question occurred after the reassignment from Fonville and resulted in further investigation at the direction of the Office of the Inspector General." *Id.*

The revised report, issued on November 10, still included a discussion of Mayeaux's military service absences. But it changed the findings section to omit her absences as a reason for the transfer and states solely that "[b]ecause of Ms. Mayeaux's financial problems previously mentioned in this report, Ms. Mayeaux was relieved of her duties" at Fonville in February 2010. Docket Entry No. 54-15

at 4. Mayeaux did not learn of the revised report until HISD filed its summary judgment motion in this case, well after her employment had been terminated. Docket Entry No. 57-2 ¶ 24.

### E. Mayeaux's Employment is Terminated

Once the Inspector General released its revised report, Ibarra and his supervisor met with Mayeaux in late November to discuss her "failure to comply with HISD Finance Procedures." Docket Entry No. 54-16 at 2. During the meeting, Ibarra presented Mayeaux with a copy of the initial IG report and talked about her military absences. Docket Entry No. 57-2 ¶ 24. Mayeaux "generally refused to discuss the IG report" with Ibarra and the supervisor. Docket Entry No. 54-1 ¶ 23. Afterwards, Ibarra recommended that HISD terminate Mayeaux's employment, and on December 17 HISD's Chief Human Resource Officer notified Mayeaux that HISD was terminating her in accordance with Ibarra's recommendation and findings. Docket Entry Nos. 54-18; 54-19.

### F. Mayeaux Files This Lawsuit

Mayeaux initially filed suit against HISD *pro se*, asserting gender discrimination and retaliation claims in addition to a USERRA violation. Mayeaux later obtained counsel and filed a second amended complaint, which asserted only one cause of action: the USERRA claim against HISD for terminating her

employment because of her military status. HISD now argues that this remaining claim should be dismissed.

## II. SUMMARY JUDGMENT STANDARD

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts on questions of fact must be resolved in favor of the party opposing summary judgment. *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

## III. DISCUSSION

### A. The Uniformed Services Employment and Reemployment Rights Act

USERRA prohibits employers from denying uniformed service members "initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, . . . performance of service, . . . or obligation." 38 U.S.C. § 4311(a). Employers violate USERRA if an employee's "service . . . or obligation for service in the uniformed services is a motivating factor in the employer's [adverse] action, unless the employer can prove that the action would have been taken in the absence of

such membership, service . . . or obligation for service." 38 U.S.C. § 4311(c)(1). The statute should be "liberally construed" for the protection and benefit of military service members. *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196 (1980).

By requiring a plaintiff to show that his or her military service was a "motivating factor" behind an adverse employment action, Congress replaced the Supreme Court's interpretation of USERRA's predecessor statute, under which an employee's military status was required to be "the *sole* motivation for the employer's action." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (explaining this history and citing *Monroe v. Standard Oil Co.*, 452 U.S. 549, 559 (1981)). Although the Fifth Circuit has not yet addressed the issue, other circuit courts have been "unanimous in adopting this 'substantial or motivating factor' test, rather than the 'sole motivating factor' test of *Monroe*." *Velázquez-García v. Horizon Lines of Puerto Rico, Inc.*, 473 F.3d 11, 16 (1st Cir. 2007) (citing decisions of the Fourth, Eighth, Ninth, Eleventh, and Federal circuits); *see also Gummo v. Vill. of Depew, N.Y.*, 75 F.3d 98, 106 (2d Cir. 1996) (following a "substantial or motivating factor" test, which it notes mirrors that used for allegations of anti-union animus under the NLRA (citing *NLRB v. Transp. Mgmt. Corp.*, 962 U.S. 393, 401 (1983)). Under this test, "military service is a motivating factor for an adverse employment action if the employer relied on, took into

account, considered, or conditioned its decision on the employee's military-related absence or obligation. *Erickson v. U.S. Postal Serv.*, 571 F.3d 1364, 1368 (Fed. Cir. 2009) (internal quotation marks and citations omitted).

If Mayeaux establishes that her military service was a motivating factor in her termination, HISD may nonetheless "escape liability by showing by a preponderance of the evidence, as an affirmative defense, that it would have made the same decision" without regard to Mayeaux's military status. *Robinson v. Morris Moore Chevrolet-Buick, Inc.*, 974 F. Supp. 571, 576 (E.D. Tex. 1997); *see* 38 U.S.C. § 4311(c)(1) (placing burden on employer to prove that action would have been taken in absence of military status). Therefore, in contrast with Title VII cases analyzed under the *McDonnell Douglas* framework in which the burden remains on the plaintiff to show pretext, in USERRA cases "the burden [is] on the employer to show lack of pretext." *Velázquez-García*, 473 F.3d at 16. Obtaining judgment as a matter of law on this type of affirmative defense is an "uphill climb" for HISD if Mayeaux can demonstrate that a jury could find that her military absences were a motivating factor in her termination. *Cf. De La Garza v. Brumby*, 2013 WL 754260, at *6 (S.D. Tex. Feb. 27, 2013) (discussing the similar *Mt. Healthy* defense in the context of First Amendment retaliation cases). Once a plaintiff makes that showing, a defendant can only succeed at the summary judgment stage by showing that the same jury that could find military absences

were a motivating factor would have to find that such absences were not *the* motivating factor.

### B. Motivating Factor

The Court first addresses whether Mayeaux can show that her military service was a motivating factor in HISD's decision to terminate her employment. The parties spend significant time briefing whether Mayeaux did indeed violate HISD fundraising procedures and whether she should be bound by those procedures given that Fonville explained them while she was on military leave in August 2009. The Court agrees with HISD that no evidence arising out of the missed in-school training constitutes evidence of discrimination. Mayeaux did not ask for make-up training, the training did not cover any new rules for which Mayeaux was later disciplined, and Mayeaux demonstrated awareness and knowledge of the school's fundraising procedures by successfully leading a fundraising project two months after the August in-school training. And the nitpicking over whether Mayeaux violated the procedures also fails to help her cause. HISD certainly had a sufficient basis for concluding that fundraising procedures were violated. Given that Mayeaux was an at-will employee, it did not even need that good cause to fire her. HISD could terminate Mayeaux for any reason—or no reason at all—so long as the termination was not based on a status protected from discrimination under federal law.

That is where HISD runs into a problem because there is direct evidence—indeed, evidence that comes from HISD—that Mayeaux's military absences were a factor in the adverse employment action.[2] That evidence is the initial report issued by HISD's Inspector General. After first making findings regarding Mayeaux's mishandling of the chocolate and jacket sales, the report notes that Mayeaux requested military leave in August and October 2009 (before Ibarra requested the Inspector General to investigate) without giving proper advance notice of those obligations. The report then spends as much time discussing Mayeaux's military leave as it does discussing the fundraising issues. And it concludes, after that lengthy discussion, that "[b]ecause of Ms. Mayeaux's absences along with the financial problems previously mentioned in this report, Ms. Mayeaux was relieved of her duties at Fonville Middle School on February 16, 2010." Docket Entry No. 54-13 at 4. Such direct evidence of discriminatory animus is rare "because employers are generally very careful to avoid statements that suggest discriminatory intent—whether their true intentions are discriminatory or not." *See Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 571, 576 (7th Cir. 2001) (holding that

---

[2] Mayeaux was reassigned from Fonville "pending the outcome" of the Inspector General's investigation. Docket Entry No. 54-1 ¶ 19. And once the report came back with findings supporting her termination, Ibarra recommended that HISD terminate her. It thus appears to the Court that the reassignment and termination are part of a single process arising from the same issues—Ibarra just wanted to wait and see the IG report before making the termination decision. At a minimum, a jury could find that the reassignment was merely a step in the ultimate termination decision, and that there is no substantive distinction between the causes of the "reassignment" and "termination."

disabled plaintiff had shown direct evidence of discrimination because of employer's statement that "he denied [plaintiff] training on the high-speed scanner because she only ha[d] one hand"); *cf. Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 254 (5th Cir. 1996) (noting that statement that employer was "gonna lay off those old people" was direct evidence of age-based discrimination); *Burns v. Gadsden State Cmty. Coll.*, 908 F.2d 1512, 1518 (11th Cir. 1990) (finding statement that "no woman would be named to a [deanship] job" constituted direct evidence of gender discrimination). Combined with Ibarra's remark to Mayeaux that "if not for your military service obligations, you would not be in the situation you are in now," as well as his reference to Mayeaux's absences at the November meeting that preceded her termination, a jury could find that HISD "relied on, took into account, [or] considered" Mayeaux's military-related absences when terminating her.

HISD presents several explanations for why the Inspector General's report and Ibarra's comment about Mayeaux's military service should not be considered evidence of discrimination. The jury may well accept some or all of them and render a verdict in HISD's favor, but there are competing inferences that would allow the opposite verdict. For example, HISD contends that Ibarra did not tell the Inspector General about Mayeaux's absences and the Inspector General only investigated the absences because of the significant military leave time Mayeaux

took after the reassignment.³  The explanation begs the question of who asked the Inspector General to look at the absences if Ibarra's referral was strictly related to fundraising practices.  Given Ibarra's earlier comment about Mayeaux's military service, and his later removal of the reference to military absences from the final IG report, a jury could conclude that Ibarra told the Inspector General about the military absences but then realized that was an improper motivation.  *See Evans v. City of Houston*, 246 F.3d 344, 355–56 (5th Cir. 2001) (noting that backdating a demotion notice and issuing a memorandum of demotion with four separate dates cast the defendant's nondiscriminatory rationale in doubt and went "straight to the heart of the issue of pretext"); *Martin v. J.A.M. Distrib. Co.*, 674 F. Supp. 2d 822, 842 (E.D. Tex. 2009) (finding that jury could conclude that employer's rationale for terminating plaintiff's employment was pretextual in light of employer's "inconsistencies and shifting explanations, along with the timing of [defendant's] changing rationale"). HISD's summary judgment motion, after describing the comment in the initial Inspector General's report that military absences were a reason for Mayeaux's reassignment, states "in reality, the reassignment was requested solely because of the investigation into her mishandling of funds and

---

³ There is also a suggestion in the IG report that Mayeaux's claimed military absences may not have been legitimate.  Of course, evidence that an individual was lying about military absences would be a basis for termination. But the IG report was unable to conclude that Mayeaux was claiming absences for days she was not serving, and HISD does not argue that was a basis for her termination.  And the discussion about this inquiry into the military absences only furthers the conclusion that a jury could find that Mayeaux's military absences were a motivating factor in her termination.

equipment." Docket Entry No. 54 at 15. But given the summary judgment posture, the Court cannot just "take HISD's word for it," when a report from its own Inspector General draws the opposite conclusion.

Likewise, a jury may very well accept Ibarra's explanation that he made the comment blaming the JROTC's lack of funds on Mayeaux's military service because of genuine concern for Mayeaux—that he was "simply trying to figure out why the necessary fundraising had not occurred," Docket Entry No. 54-1 ¶ 7, but it might also view his remark as less benign. Viewing all reasonable inferences in Mayeaux's favor as is required at this stage of the case, the Court concludes that a jury could determine that Mayeaux's military service was a motivating factor in HISD's decision to terminate her.

### C. HISD's Affirmative Defense

Even with such a motivating factor finding, HISD can still prevail if it shows that it would have made the same decision regardless of Mayeaux's military service. This can be a strong defense at trial, especially in a case such as this one with well-documented evidence concerning another motivation (the alleged fundraising improprieties). But, as discussed above, it is difficult to prevail at summary judgment on an affirmative defense on which HISD has the burden. *See, e.g.*, *Leisek*, 278 F.3d at 900 (rejecting employer's affirmative defense in USERRA claim because the employer "has not established as an uncontroverted fact" that it

would have terminated plaintiff even without his National Guard obligations); *cf. Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001) (noting with respect to the similar *Mt. Healthy* defense for First Amendment retaliation claims brought by public employees that it "is for a jury to resolve . . . whether the employer would have made the same employment decision in the absence of the protected [conduct]").

One of the only published USERRA decisions within this circuit illustrates this high hurdle. In *Robinson*, the plaintiff served as a reservist in the army and had to miss an important event at his work to attend an army-mandated physical examination. His supervisor reacted angrily at this request and fired him a week later. Based on that chronology of events, the Court concluded that the plaintiff had shown that his employer might have been motivated to fire him because of his military absence. 974 F. Supp. at 576. Turning to the employer's affirmative defense, the Court noted that though the employer had shown that the plaintiff was "an unsatisfactory and unhappy employee" with several workplace violations, the employer "failed to show that its legitimate reason, standing alone, would have induced it to make the same decision." *Id.* at 578. It therefore allowed the plaintiff's USERRA claim to proceed to a jury.

Similarly, because a jury could find that Mayeaux's military absences were a motivating factor in her termination, it is also for the jury to decide whether the

problems with Mayeaux's fundraising activities would have led to her termination even if she were not serving in the military. HISD treats its burden on this affirmative defense as the same one that exists under the *McDonnell Douglas* framework in which an employer need only identify a legitimate, nondiscriminatory reason for the termination in order to shift the burden back to the plaintiff. *See* Docket Entry No. 58 at 6 ("Even if plaintiff has established a prima facie case, she has failed to prove Defendant's legitimate reasons for her termination were pretext for retaliatory or discriminatory intent in violation of USERRA."). But USERRA is different. A plaintiff's only burden is to produce evidence from which a jury could find that military service was a motivating factor in an employment action; the employer then has "the burden . . . to show a lack of pretext" via an affirmative defense. *Velázquez-García*, 473 F.3d at 16.

## IV. CONCLUSION

For the reasons explained above, Defendant HISD's Motion for Summary Judgment (Docket Entry No. 54) is **DENIED**. A subsequent order will schedule a status conference to select a trial date and address other issues.

**SIGNED** this 10th day of January, 2014.

_____
Gregg Costa
United States District Judge